## MABRY v. BEAUMONT, United States Marshal.

(First Division. Juneau. April 3, 1922.)

No. 2169–A.

1. **Habeas Corpus** ⟨⟩4, 92(1)—**Scope of Inquiry.**

The writ of habeas corpus cannot be put to the use of reviewing judgments or orders made by a judge or court acting within its jurisdiction. The functions of the writ, where a party who has applied for its aid is in custody, do not extend beyond an inquiry into the jurisdiction of the court by which it was issued and the validity of the process upon its face.

2. **Indictment and Information** ⟨⟩35—**Complaint—Intoxicating Liquor.**

Defendant was arrested upon the complaint made by the assistant United States attorney in the usual form required before a justice of the peace in criminal cases, for a violation of the Alaska prohibition law. On habeas corpus, objection was made that the statute authorized the arrest upon information filed by an official only. *Held*, the accusation in this case is designated as a complaint, but it fulfills, in every respect, the functions of an information, and is a sufficient compliance with the statute.

3. **Criminal Law** ⟨⟩214—**Habeas Corpus** ⟨⟩97—**Arrest—Waiver of Defects in Warrant.**

A warrant for the arrest of the defendant charged him with the crime of "violation of the Alaska Bone Dry Law" only. The defendant appeared in open court before the magistrate,

⟨⟩See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pleaded to the accusation, was tried, found guilty, and sentenced. *Held*, the question of his original arrest cannot be heard before the court on habeas corpus, since he submitted to the jurisdiction of the court:

**4. Criminal Law ⬲883—Verdict.**

Defendant was on trial for violation of the Alaska prohibition law, the jury returned a verdict finding "the defendant Harry Mabry guilty," without stating the name of any offense or in any wise referring to the complaint for certainty. *Held*, it is settled, beyond question, that a verdict of guilty, without specifying any offense, is general, and is sufficient, and is to be understood as referring to the offense charged in the indictment or complaint.

**5. Criminal Law ⬲258(2)—Judgments.**

On trial before a justice of the peace on a criminal charge for violation of the Alaska prohibition act, the defendant was found guilty by the jury, and the justice entered judgment, reciting that he was convicted "in a criminal action for the crime of violating the Alaska Bone Dry Law," and fixed the penalty thereon. On habeas corpus, testing the validity of the judgment, *held*, a substantial compliance with section 2539, Comp. Laws of Alaska 1913, and a valid judgment.

**6. Criminal Law ⬲258(1)—Judgment—Justice of the Peace.**

The judgment of an inferior court, such as a police court, mayor's, magistrate's, or justice's court, having jurisdiction conferred by law to try and dispose of a criminal case, is as conclusive, and rests upon the same basis when jurisdiction is attached, as the adjudication of any common-law court.

**7. Words and Phrases—"Alaska Bone Dry Law."**

Common usage has given the phrase "Alaska Bone Dry Law" a definite meaning in Alaska. It is universally known as referring to the act of Congress entitled "An act to prohibit the manufacture or sale of alcoholic liquors in the territory of Alaska, and for other purposes," approved February 14, 1917, 39 Stat. 903 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3643b–3643r).

**8. Criminal Law ⬲883—Judgment.**

The omission to designate in the judgment of conviction the crime of which the defendant is found convicted does not render the judgment void, if from the whole record, taken together, the crime is shown.

**9. Criminal Law ⬲995(4)—Judgment.**

Where the court is authorized to impose a sentence, but exceeds that prescribed by law, the judgment is void only for the excess.

The record in this case shows that the defendant was arrested, tried and convicted before a justice of the peace for a violation of the Alaska Bone Dry Law (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3643b–3643r), at Sitka, Alaska, for having in his possession intoxicating liquor on December 21, 1921.

He attempted to appeal the case to the district court, but failed to file, within the 30 days allowed by the statute, an undertaking for costs, and his appeal was dismissed, and the judgment of the lower court affirmed.

Wickersham & Kehoe, of Juneau, for plaintiff.

Arthur G. Shoup, U. S. Atty., of Ketchikan, H. D. Stabler, Asst. U. S. Atty., of Juneau, for defendant.

REED, District Judge.   Thereupon the defendant present-ed this, his petition, for a writ of habeas corpus, alleging that he is, for the several reasons set forth in his petition and above stated, unlawfully restrained of his liberty by the United States marshal.   The return of the United States marshal alleges that the petitioner was in custody by virtue of the aforesaid judgment of the justice and the order and judgment of this court, affirming the judgment of the justice.   He further returned that the petitioner voluntarily surrendered himself into custody by virtue of said judgment.   That part of the return of the United States marshal stating that the petitioner voluntarily surrendered himself to the United States marshal was controverted by the petitioner and thereupon testimony was taken, from which it appears that the surrender of the defendant to the custody of the United States marshal was not voluntary, but was made on demand of the United States marshal that he so do; the United States marshal having the commitment in his possession.

The case has been ably argued by the counsel for petitioner, the United States Attorney appearing in contra.   The United States attorney takes the position that the defects or errors pointed out by petitioner were not jurisdictional, and were such as could be corrected by writ of error or appeal in the original case, and that therefore the remedy by habeas corpus would not lie.   It is well settled that the writ of habeas corpus cannot be put to the use of reviewing judgments or orders made by a judge or court acting within his or its jurisdiction.

The functions of the writ, where a party who has applied for its aid is in custody, do not extend beyond an inquiry into the jurisdiction of the court by which it was issued and the validity of the process upon its face. See Savin, Petitioner, 131 U. S. 267, 9 Sup. Ct. 699, 33 L. Ed. 150; In re Coy, 127 U. S. 731, 8 Sup. Ct. 1263, 32 L. Ed. 274; Ex parte Yarbrough, 110 U. S. 653, 4 Sup. Ct. 152, 28 L. Ed. 274; Bailey on Habeas Corpus, par. 30.

The return of the United States marshal shows that the petitioner is held by him under restraint by virtue of the judgment of this court dismissing the appeal from and affirming the judgment of the lower court, and the contention of the United States attorney is that the petitioner is herein invoking the remedy by habeas corpus as an anticipatory writ of error; that if the lower court had jurisdiction of the case as disclosed and jurisdiction of the person, correction of errors and irregularities cannot be made by a writ of habeas corpus. Counsel for petitioner, on the other hand, contends that the judgment of the lower court was absolutely void in not disclosing with certainty the crime of which the defendant was convicted, and that the affirmance thereof by this court was equally void 'because the judgment of this court had no more force and effect than the original judgment of which it was an affirmance.

In this connection, the point was made by the government that the petitioner, in his position, is inconsistent even to the point of an estoppel, in that he sought to appeal from the judgment of the lower court and voluntarily sought to invoke the jurisdiction of this court to try the case de novo. Having done so, he stands now in an inconsistent position by placing himself apparently within the rule of employing the writ as an anticipatory writ of error.

In the case of Henry v. Henkel, 235 U. S. 228, 35 Sup. Ct. 56, 59 L. Ed. 203, the Supreme Court lays down the rule as to how far the court should go into the record on a petition for a writ of habeas corpus, in the following language:

"In view, however, of the nature of the writ and of the character of the detention under a warrant, no hard and fast rule has been announced as to how far the court will go in passing upon questions raised in habeas corpus proceedings. In cases which involve a conflict of jurisdiction between state and federal authorities, or where the treaty rights and obligations of the United

States are involved, and in that class of cases pointed out in Ex parte Royall, 117 U. S. 241, Ex parte Lange, 18 Wallace, 163, New York v. Eno, 155 U. S. 89, and In re Loney, 134 U. S. 372, the court hearing the application will carefully inquire into any matter involving the legality of ~the detention, and remand or discharge as the facts may require. But, barring such exceptional cases, the general rule is that, on such applications, the hearing should be confined to the single question of jurisdiction, and even that will not be decided in every case in which it is raised."

The case of Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868, was a case wherein a writ was prayed for on the ground that the petitioner was confined under a state statute alleged to be in conflict with the Constitution of the United States. The case of Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872, arose on the point as to whether a second sentence of imprisonment could be imposed by the court during the same term of court, after the court had theretofore imposed a sentence of fine and imprisonment contrary to law; the court holding that the authority of the lower court was ended with the first judgment. The cases of New York v. Eno, 155 U. S. 89, 15 Sup. Ct. 30, 39 L. Ed. 80, and In re Loney, 134 U. S. 372, 10 Sup. Ct. 384, 33 L. Ed. 949, are cases involving the question whether the offenses therein referred to were cognizable exclusively under the laws of the state or the United States, or by both, and all turn to a large extent upon the question of the jurisdiction of the specific courts to entertain the original action.

In the case of Glasgow v. Moyer, 225 U. S. 420, 32 Sup. Ct. 753, 56 L. Ed. 1147, the Supreme Court, through Mr. Justice McKenna, uses this language, which is very pertinent in the instant case, as disposing of several grounds for the discharge of the prisoner urged by counsel for petitioner. Justice McKenna says:

"The writ of habeas corpus cannot be made to perform the office of a writ of error. This has been decided many times, and, indeed, was the ground upon which a petition of appellant for habeas corpus to this court, before his trial, was decided. It is true, as we have said, that the case had not then been tried, but the principle is as applicable and determinative after trial as before trial."

This was decided in one of the cases cited, In re Lincoln, 202 U. S. 178, 26 Sup. Ct. 602, 50 L. Ed. 984, which cited other cases to the same effect. Harlan v. McGourin, 218 U.

S. 442, 31 Sup. Ct. 44, 54 L. Ed. 1101, 21 Ann. Cas. 849, was an appeal from a judgment discharging a writ of habeas corpus petitioned for after conviction, and it was held that the writ could not be used for the purpose of proceedings in error, but was confined to a determination whether the restraint of liberty was without authority of law.

"In other words, as it was said, 'upon habeas corpus the court examines only the power and authority of the court to act, not the correctness of its conclusions.' Matter of Gregory, 219 U. S. 210, was a writ of habeas corpus brought after conviction, and we said that we were not concerned with the question whether the information upon which the petitioner was prosecuted and convicted was sufficient or whether the case set forth in an agreed statement of facts constituted a crime—that is to say, whether the court properly applied the law—if it be found that the court had jurisdiction, to try the issues and to render judgment."

The court then says:

"The principle of the cases is the simple one that if a court has jurisdiction of the case the writ of habeas corpus cannot be employed to retry the issues, whether of law, constitutional or other, or of fact."

Again the court, in the same case, says:

"The principle is not the less applicable because the law which was the foundation of the indictment and trial is asserted to be unconstitutional or uncertain in the description of the offense. Those questions, like others, the court is invested with jurisdiction to try, if raised, and its decision can be reviewed, like its decisions upon other questions, by writ of error."

After a further discussion, the court says that it would introduce confusion in the administration of justice if the defenses which might have been made in an action could be reserved as grounds of attack upon the judgment after verdict.

The question of the jurisdiction of the commissioner and ex officio justice of the peace at Sitka to hear and to try all classes of cases for violation of the Alaska Bone Dry Act of Congress, approved February 14, 1917, is not seriously questioned by counsel for petitioner. Section 28 provides to that effect in the following language:

"That prosecutions for violations of the provisions of this act shall be on information filed by any such officer before any justice of the peace or district judge, or upon indictment by any grand jury of the territory of Alaska, and said United States district

attorney, or his deputy, shall file such information upon the presentation to him or his assistants of sworn information that the law has been violated."

But counsel for petitioner urges that the said section provides that the prosecution shall be on information, while in the case under discussion the prosecution was upon a complaint filed by one purporting to be the Assistant United States attorney, and he further contends that the United States attorney or his assistant can file such information only upon a sworn information being presented to him of the violation of the law, and that therefore the justice had no jurisdiction of the offense.

The interpretation given by counsel as to the authority of the United States attorney or his assistants to file an information I cannot agree with. A reasonable construction of the statute is that, when a sworn information is presented to the United States attorney or his assistants of a violation of the law, he shall file an information. In other words, the section makes it the mandatory duty of the United States attorney, upon the presentation to him, under oath, of information of the violation of the law, to file an information with the justice or court. The question of the validity of the accusation before the justice, as to whether it was an information or complaint, does not seem to be material. Section 2379, Compiled Laws, defines information as:

"The allegation or statement made before a magistrate, and verified by the oath of the party making it, that a person has been guilty of some designated crime."

The accusation in this case is designated as a complaint, but it fulfills, in every respect, the functions of an information. It alleges that the defendant petitioner herein was, on the 1st day of December, 1921, at Sitka, and within the jurisdiction of the court, guilty of having in his possession intoxicating liquors, that is to say, moonshine whisky, contrary to the form of the statutes in such cases made and provided.

The common-law distinction between a complaint and an information is that the former is an accusation or charge against an offender, made by a private person, under oath, to the justice of the peace or other proper officer, alleging that the offender has violated the law, while an information was an accusation filed by the prosecuting officer, charging an of-

fense against the law. In the former the party making the accusation was known as the private prosecutor. See Compiled Laws, §§ 2521 and 2379; Lincoln v. Smith, 27 Vt. 328; In re Oliver, 21 S. C. 318, 53 Am. Rep. 681; Semon v. State, 158 Ind. 55, 62 N. E. 625; Clepper v. State, 4 Tex. 242.

In the case of United States v. Mabry, under discussion, the designation of the instrument filed before the justice is only a question of nomenclature. The instrument bears all the essentials of an information, both under the statute and at common law, even were the petitioner authorized to raise the question under the authorities heretofore cited.

The objection raised as to the warrant for the arrest of the defendant cannot be considered at this time, even if it were material. This objection is that the warrant did not designate any crime of which the defendant was accused in the complaint—simply designating that he was accused of violating the Alaska Bone Dry Law. It appears that the defendant appeared in open court, was informed of the charge against him, pleaded to the accusation, and was tried. The question of his original arrest cannot be before the court at this time, if he had submitted to the jurisdiction of the justice.

The question before the court, on the granting of a writ of habeas corpus in this proceeding, is whether the petitioner is at this time illegally restrained of his liberty. As was said by Justice Gaynor, for the Supreme Court of Iowa, in Addis v. Applegate, 171 Iowa, 150, 154 N. W. 168, Ann. Cas. 1917E, 332, the primary question in all proceedings of this kind is whether or not the applicant is illegally restrained of his liberty at the time the application is made. It is immaterial, so far as the right to the writ is concerned, whether or not he was originally restrained by criminal or civil process. The question to be determined on this hearing is: Is he now lawfully or unlawfully restrained?

The counsel for petitioner further contends that the verdict of the jury was not sufficient, in that it failed to state that the defendant was guilty as charged in the complaint or information, but stated only that the jury found him guilty. The verdict recites the court and cause and is sufficient in that respect. The Supreme Court of the United States, in Statler v. U. S., 157 U. S. 277, 15 Sup. Ct. 616, 39 L. Ed. 700, uses the following language:

"It is settled beyond question that a verdict of guilty, without specifying any offense, is general, and is sufficient, and is to be understood as referring to the offense charged in the indictment,"

—citing St. Clair v. U. S., 154 U. S. 154, 14 Sup. Ct. 1002, 38 L. Ed. 936.

In a trial per pais (8th Ed. 1776, p. 287), the rule is thus stated:

"If the jury give a verdict of a whole issue and of more, that which is more is surplusage and shall not stay the judgment; 'per utile per inutile non vitiatur.'"

Bishop's Criminal Procedure, p. 623, § 1005a, is substantially to the same effect; the words being:

"A finding of lay people need not be framed under the strict rules of pleading or after any technical form. Any words which convey the idea to the common understanding will be adequate, and all fair intendments will be made to support it. To say, therefore, that the defendant is guilty of an offense named which is less than the whole alleged, is sufficient without adding 'as charged in the indictment,' for the latter will be supplied by the construction. So likewise a general finding of guilty will be interpreted as guilty of all that the indictment alleges."

This, to my mind, disposes of the objection that the verdict of the jury was void for uncertainty.

We now come to the objection raised to the judgment. The petitioner maintains that the judgment of the justice was void, because not in compliance with section 2539, Compiled Laws. This section provides that, when a judgment of conviction is given upon a plea of guilty or upon a trial, the justice must enter the same in the justice docket substantially as follows:

"Justice's Court for the Precinct of ——, District of Alaska, Division No. ——.

"The United States of America v. A. B.

(Day of the Month and Year).

"The above-named A. B. having been brought before me, C. D., a commissioner and ex officio justice of the peace, in a criminal action, for the crime of (briefly designate the crime), and the said A. B. having thereupon pleaded 'not guilty' (or as the case may be), and been duly tried by me (or by a jury, as the case may be), and upon such trial duly convicted, I have adjudged that he be imprisoned in the county jail —— days and that he pay the cost

of the action, taxed at $——— (or that he pay a fine of $———
and such costs and be imprisoned in such jail until such fine and
costs be paid, not exceeding ——— days, as the case may be).

"C. D.,

"Commissioner and Ex Officio Justice of the Peace."

This form was substantially followed by the justice in the
judgment under consideration in all particulars, except that,
in designating the crime of which the defendant was convict-
ed, it recites that the crime was a violation of the Alaska Bone
Dry Act. Counsel contends that this does not designate any
crime, that there may be several crimes charged under this
act, that the words "Alaska Bone Dry Law" in themselves
are meaningless as designating the crime, and that, therefore,
the judgment of the justice is void, as not being in compli-
ance with the statute aforesaid.

It will be noted that the provisions of section 2539 refer to
the entry in the justice docket by the justice after the judg-
ment is pronounced, and refer merely to the ministerial act
of the entry in the docket. Section 2535 of the Compiled Laws
provides that, when the defendant pleads guilty or is convict-
ed, either by the justice or the jury, the justice must give
judgment thereon for such punishment as may be prescribed
by law for the crime. This judgment may be given orally,
and usually is. Section 2539 provides that, when a judgment
of conviction is given, the entry must be made substantially
in the form prescribed.

Conceding, under this view of the act, that the entry of
the judgment by the justice did not substantially comply with
the form prescribed, would it render the judgment void? To
this we should look to the whole record, and from it we find
that the defendant was convicted of a violation of section 1
of the act referred to, in that he had in his possession, on
December 1, 1921, intoxicating liquor, to wit, moonshine whis-
ky, and sentence was made as prescribed by law.

But counsel contends that we can only look to the judgment
as spread on the docket of the justice, and that no presump-
tion can be had as to the justice proceedings; a justice court
not being a court of record.

It is well settled that, where a justice of the peace has ju-
risdiction of a person or subject-matter, any judgment ren-
dered by him will be sustained on the same basis as that of

a court of record. In re Joseph, 206 Mich. 659, 173 N. W. 358, the following from 12 R. C. L. p. 1192, is cited with approval:

"The judgment of an inferior court, such as a police court, mayor's, magistrate's, or justice's, having jurisdiction conferred by law to try and dispose of a criminal case, is as conclusive and rests upon the same basis, when the jurisdiction has attached, as the adjudication of any other common-law court."

It is to be presumed that the judgment was properly given by the justice, therefore, in the present case. In addition, I am of the opinion that the judgment entry was a substantial compliance with the statute. Common usage has given the phrase "Alaska Bone Dry Law" a definite meaning. It is universally known as referring to the act of Congress entitled:

"An act to prohibit the manufacture or sale of alcoholic liquors in the territory of Alaska, and for other purposes."

It is so used by our Circuit Court of Appeals in the case of Abbate v. United States, 270 Fed. 735, and in the case of Koppitz v. U. S. (C. C. A.) 272 Fed. 96. In fact, the judgment in this case is identical in describing the offense with that used in the last-named case. Under the terms of the act of Congress known as the Alaska Bone Dry Act, the justice has jurisdiction over all offenses denounced by that act, and a person of common understanding, without looking further into the record than the judgment itself, would know that the judgment was given for a violation of the act in question, and that under the terms of the act itself the justice had jurisdiction of all offenses committed thereunder.

If, as claimed by counsel for petitioner, the words "Alaska Bone Dry Act" are meaningless, and have no force and effect, then they could be rejected as surplusage, and it is well settled by decisions of great weight that the omission to designate the crime of which defendant is found convicted in the judgment does not render the judgment void. At most it is a mere irregularity or informality. In Ex parte Satt, 164 Mich. 472, 129 N. W. 863, the court say:

"Where accused was tried and sentenced in a court of competent jurisdiction, the defect in his commitment to the penitentiary arising from the failure to recite the offense, is not a ground for discharge on habeas corpus."

In the recent case of Ex parte Thurston, 233 Fed. 847, Judge Neterer, of the District Court, Western Division of Washington, on a petition for a writ of habeas corpus by Thurston, who was confined in the United States penitentiary at McNeil's Island, state of Washington, on a conviction for violation of section 195 of the Criminal Code of the United States, in effect decided as follows:

"Where the crime for which accused was convicted, and all the proceedings thereon, through the trial and verdict up to conviction and sentence, appear of record, the fact that the judgment of sentence merely sentenced accused to imprisonment in the federal penitentiary, but did not recite the crime of which he was committed, will not warrant his release on habeas corpus, for the whole record, taken together, shows the crime."

In the case of Ex parte Gibson, 31 Cal. 620, reported in 91 Am. Dec. 546, the Supreme Court of California, through Justice Sanderson, rendered a very elaborate opinion on the subject, and I take the liberty to quote largely therefrom:

"The only objection urged against this judgment by counsel for the prisoner is, that it does not state the offense of which he was convicted, and in view of that omission it is claimed that it is void, and therefore furnishes no legal warrant for the detention of the prisoner. This objection is founded upon the terms of [section 462] of the Criminal Practice Act, which requires the clerk, in entering a judgment of conviction, 'to state briefly the offense for which the conviction has been had.'

"What the entry which contains the judgment against a defendant in a criminal action ought regularly and properly to state, in order to fully satisfy the requirements of the law, is a question not at all difficult to answer. It ought to show that all the steps or acts required by the statute which regulates proceedings in criminal cases to be done at that stage of the case, were performed. In cases where it is not lawful for the court to proceed to judgment in the absence of the defendant, as in felonies, it ought to show that the defendant was present in person (Cr. Practice Act, § 443); that he was informed by the court, or by the clerk under its direction, of the nature of the indictment, of his plea, and if his plea was 'not guilty,' of the nature of the verdict; and that he was asked whether he had any legal cause to show why judgment should not be pronounced against him (section 456). If cause is shown, the entry should show what it was, and what disposition was made of it by the court, and, lastly the punishment or sentence imposed by the court, which should be stated with sufficient certainty to enable the officer to execute it. If it is a judgment of imprisonment, the commencement and duration of the term and the place of confinement ought to be stated with certainty, if

the commencement is stated at all; otherwise, the judgment may be absolutely void. But the better practice is not to fix the commencement of the term, but merely to state its duration and the place of confinement. Section 465. So in the case of a judgment of death, the judgment ought not to appoint the day of execution, but leave it to be appointed in the warrant. Section 466; 2 Bish. Cr. Pr. § 879.

"But, while all this ought. regularly and properly to appear in the entry of judgment, it does not follow that the omission of some of them, or any of them, will render the judgment erroneous, much less void.

"In England, an omission to state that the defendant was asked if he had any legal cause to show against the judgment, would be fatal on writ of error. 1 Chit. Cr. Law, 701. In the United States this question has been decided in various ways—some courts holding that it would be error. and others that it would not, even in capital offenses. Grady v. State. 11 Ga. 253: Sarab v. State, 28 Ga. 576; West v. State, 22 Zab. 212; State v. Ball, 27 Mo. 324; Hamilton v. Commonwealth, 4 Harris, Pa. 129 (55 Am. Dec. 485); Safford v. People, 1 Park. Cr. 474; Dyson v. State, 26 Miss. 362; People v. Stuart, 4 Cal. 218. But I have been unable to find a single case, in England or America, where such an omission has been held sufficient to render the judgment absolutely void.

"Whether this judgment, then, is absolutely void or not is merely a question of jurisdiction. If it appears that the court had jurisdiction of .the subject-matter and the person of the defendant (it being a court of general jurisdiction, proceeding according to the course of common law), the judgment is not void, however erroneous it may be, unless it is so uncertain in its terms as to be void upon that ground. But no question of the latter character is made in this case. Said Mr. Chief Justice Marshall, in Ex parte Tobias Watkins, 3 Pet. 202: 'An imprisonment under a judgment cannot be unlawful unless that judgment be an absolute nullity; and it is not a nullity if the court has 'general jurisdiction of the subject.' Such is the general rule. Does the statute, by requiring the offense to be stated, change or modify it? But I do not find it necessary, for the purposes of this case, to determine whether, by reason of this provision of the statute, a judgment which is entirely silent as to the offense would for that reason be null and void; for while the entry in this case does not show the precise offense of which the prisoner was convicted, it shows that he was indicted for the crime of murder, tried and convicted of some offense under or within that indictment. It shows, therefore, a subject-matter within the jurisdiction of the court. The only reason why, as I conceive, the judgment should show the offense, is that it may. appear that the punishment inflicted is lawful, or, in other words, that the court has not exceeded its power in that respect. Now, no conviction could have been had under the indictment in view of which the punishment of imprisonment for ten years would have been beyond the power of the court to impose.

There are only three offenses of which he could have been con-victed: Murder in the first degree, murder in the second degree, and manslaughter. For either of the last two, the court had pow-er to imprison for 10 years. If the conviction was for the first, the fact that the court imposed imprisonment instead of death as the punishment, would not entitle the prisoner to his discharge. Where the prisoner was sentenced to the penitentiary, on convic-tion for horse stealing, for one year, the law requiring a sentence for such offense for a period of not less than three years, the er-ror was held to afford no ground for discharge on habeas corpus. Ex parte Shaw, 7 Ohio St. 81, 70 Am. Dec. 55. The court said: 'The question is one simply of jurisdiction. The court had juris-diction over the offense and its punishment, and while in the legiti-mate exercise of its power committed a manifest error and mis-take in the award of the number of years of imprisonment. The sentence was not void, but erroneous.' Hence we have a case over which the court in any event had jurisdiction, and in which it had not in any event exceeded its powers.

"In People v. Cavanagh, 2 Park. Cr. R. 660, the judgment showed that there had been a conviction for misdemeanor, without stat-ing the particular offense, and called for an imprisonment for the period of thirty days. The statute in New York in relation to the substance of a judgment entry is the same as ours. On habeas corpus the Supreme Court held that the judgment was sufficient to hold the prisoner, on the ground that it showed a case within the jurisdiction of the court in which imprisonment for thirty days could be lawfully imposed, notwithstanding the precise offense for which he was convicted was not stated."

In Pointer v. United States, 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208, the Supreme Court of the United States, speak-ing through Justice Harlan on this point, says:

"The specific objection to the sentence is that it does not state the offense of which the defendant was found guilty, or that the defendant was guilty of any named crime. This objection is tech-nical, rather than substantial. The record of the trial preceding the sentence shows an indictment returned into court by grand jurors duly selected, impaneled, sworn, and charged. * * * The indictment itself is given, and it appears that the defendant was brought into court upon it; that he was arraigned and pleaded not guilty to the charges contained in it; that he was tried upon the same indictment before a petit jury lawfully impaneled and sworn; and that a verdict of guilty * * * as charged * * * was received and incorporated into the record of the trial. When, therefore, the defendant was brought into court and asked what he had to say 'why the sentence of the law upon the verdict of guilty, heretofore returned against him by the jury * * * shall not now be pronounced against him; all doubt as to the offense of which he was found guilty, and on account of which he was

sentenced, * * * is removed. The sentence itself is in the record, and the record shows everything necessary to justify the punishment inflicted. While the record of a criminal case must state what will affirmatively show the offense, the steps, without which the sentence cannot be good, and the sentence itself, 'all parts of the record are to be interpreted together, effect being given to all, if possible, and a deficiency at one place may ·be supplied by what appears in another.' "

For this reason, the objection last stated is not sustained. In the instant case the record shows that the petitioner was complained of for having in his possession, on December 1, 1921, intoxicating liquor, to wit, moonshine whisky; that he was arrested and brought before the justice, pleaded not guilty, was tried by a jury, convicted and sentenced. The record is clear as to the crime of which he is charged and for what he was sentenced; and under· the decision of the Supreme Court and the cases cited, it appears to me that the objection of counsel for petitioner to the sentence is no ground for his discharge on this writ.

The further ground is asserted by counsel that the judgment is void as being in excess of the jurisdiction of the justice. This objection is not tenable as being a ground for discharge. It will be noted that the number of days' imprisonment set forth in the sentence is 300. The fine is $600. The statute fixes the imprisonment at one day for each $2 of the fine. See section 190, Criminal Code.

Section 2299, Compiled Laws of Alaska, provides:

"That a judgment that the defendant pay a fine must also direct that he be imprisoned in the county jail until the fine be satisfied, specifying the extent of the imprisonment, which cannot exceed one day for every two dollars of the fine; and in case the entry of judgment should omit to direct the imprisonment and the extent thereof, the judgment to pay the fine shall operate to authorize and require the imprisonment of the defendant until the fine is satisfied at the rate above mentioned."

Under this sentence, imprisonment for the costs is not provided for.

As for the contention that the jurisdiction of the justice extends to only one year's imprisonment, I fail to find that our statute so provides. The jurisdiction of a justice is set forth in section 2519, Compiled Laws of Alaska. I can find no more conclusive authority on this point than Ex parte

Lange, 85 U. S. (18 Wall.) 163, 21 L. Ed. 872. In this case the statute provided that the penalty for the offense of which the petitioner was convicted was a fine or imprisonment, but the court, in the first instance, imposed a sentence of fine and imprisonment. As to this judgment the Supreme Court, through that eminent jurist, Justice Miller, says:

"The judgment first rendered, though erroneous, was not absolutely void. It was rendered by a court which had jurisdiction of the party and of the offense, on a valid verdict. The error of the court in imposing the two punishments mentioned in the statute, when it had only the alternative of one of them, did not make the judgment wholly void."

In the matter of the habeas corpus proceedings before the Supreme Court, in the case In re Bonner, 151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149, the error or excess of jurisdiction of the court in imposing sentence is gone into by Judge Field in a very instructive opinion, and therein the court says:

"If the court is authorized to impose imprisonment, and it exceeds the time prescribed by law, the judgment is void for the excess."

In the case before us the judgment is not void, but may be void as to any excess, and at the present time is not subject to collateral attack under a writ of habeas corpus. If the justice had jurisdiction to sentence the defendant for a year only, including the fine under the statutory calculation, the judgment would be void only as to the excess. See section 2299 and the proviso to section 2301, Compiled Laws of Alaska, and Booth v. U. S., 197 Fed. 287, 116 C. C. A. 645.

I am unable to see that the defendant is illegally restrained of his liberty by the United States marshal for the reasons stated, and therefore the writ will be discharged and the petitioner remanded to the custody of the marshal for execution of the sentence of the court.